## ALFRED IJAMS vs. GRAFTON DUVALL.

*Officers—Judge of the Orphans' Court—Contested Election—Vacancy—Authority of the Governor to Appoint—Title of Person Returned as Elected and Commissioned—Order for New Election by House of Delegates—Constitutional Law.*

When an election of a Judge of an Orphans' Court is contested under Constitution, Art. 4, sec. 12, and the House of Delegates declares that the person returned as elected and commissioned was not duly elected, and orders a new election, the person so returned and commissioned is entitled to hold the office until the election of a successor ; and if such election be not held there is no vacancy in the office which the Governor is authorized to fill under Constitution, Art. 4, sec. 40.

A and B were candidates at an election for the office of Judge of the Orphans' Court of a county. A was returned as elected, commissioned as such by the Governor, and assumed the office. B contested the election before the House of Delegates, which passed a resolution declaring that A was not duly elected and ordering a new election to be held. On account of certain legislation at that session

of the Legislature the election so ordered could not be held.   Subsequently the Governor appointed B Judge of the Orphans' Court. Upon a petition for a *mandamus* by B to recover possession of the office from A, *Held*,

1st. That under Constitution, Art. 4, sec. 40, the Governor is authorized to appoint a Judge of the Orphans' Court only when there is a vacancy in the office ; that the resolution of the House of Delegates declaring that the person returned as elected and commissioned was not elected, did not create a vacancy, and that the vacancy which the Governor is empowered to fill is one which occurs after there has been an election.

2nd. That A is entitled to hold the office under his commission until a successor is legally chosen, and this can only be by an election. (*a*).

Appeal from an order of the Circuit Court for Anne Arundel County (ROBERTS, C. J.., and REVELL, J.), dismissing appellant's petition for a *mandamus* directing the appellee to surrender to him the office of Chief Judge of the Orphans' Court of said county.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Dennis Claude*, for the appellant.

There is no question of fact presented by this case, and the questions of law seem to be : 1st. Did the action of the House of Delegates make a vacancy in the office of Chief Judge of the Orphans' Court ? 2nd. Is it not the duty of the Governor to fill a vacancy occuring in this office ;   3rd. Is there any reason why the Governor should not fill this special vacancy?

As to the first point, the action of the House of Delegates in adjudging the election of Grafton Duvall illegal certainly made a vacancy in the office of Chief Judge of the Orphans' Court.   In the first place, the election of Grafton Duvall to

---

(*a*). The legislation referred to in the opinion of the Court which made it impossible to hold the election for Judge of the Orphans' Court of Anne Arundel County, as ordered by the House of Delegates, is discussed in *Munroe* v. *Wells*, 83 Md. 505.

said office was duly contested in the case of *Ijams et al.* v. *Duvall et al.*, before the last House of Delegates. *House Journal, 1896*, pages 22, 1094–8. 2nd. The House of Delegates was the only legal and competent jurisdiction to try the said contest. *Constitution of 1867*, Art. 4, sec. 12; *Brooke* v. *Widdicomb*, 39 Md. 388, 404 ; *State* v. *Jarrett and Harwood*, 17 Md. 309, 327. 3rd. The judgment of the House of Delegates in said contest is set forth in the following resolution : *Resolved by the House of Delegates of Maryland*, That at an election held on the 5th of November, 1895, for Judges of the Orphans' Court for Anne Arundel County, in said county, Grafton Duvall and Galloway Cheston were not duly and legally elected Judges o the Orphans' Court for Anne Arundel County. 4th. The jurisdiction of the House of Delegates to " judge of the election and qualification " of parties to an election contest, carries with it the power to adjudge such election illegal and void. *Anderson* v. *Levely*, 58 Md. 193, 202 ; *Brooke* v. *Widdicomb*, 39 Md. 404 ; *State* v. *Jarrett and Harwood*, 17 Md. 327. 5th. When the House of Delegates, or any other competent jurisdiction, declares an election illegal or void, after the candidates returned as elected are in office, such action creates a vacancy in such office. *Handy* v. *Hopkins*, 59 Md. 170–1–2 ; *Jump* v. *Spence*, 28 Md. 11. Hence, it appears to be established beyond cavil, that the House off Delegates has declared the office vacant, and that it had the sole and exclusive jurisdiction and authority so to do.

As to the second point, we find that the Constitution declares that : " In case of a vacancy in the office of Judge of the *Orphans' Court* the Governor *shall appoint*, subject to confirmation or rejection by the Senate, some suitable person to fill the same for the residue of the term." *Constitution 1867*, Art. 4, sec. 40.

The above provision imposes upon the Governor an absolute duty in positive and unequivocal language, *i. e.*, he *shall appoint* in case of *a vaeaney*. This language does not qualify his duty to appoint or confine it to a vacancy caused

in any particular way.    Whether such vacancy is caused by death, resignation, removal from the county, or the *act of the House of Delegates in adjudging an election void*, makes no difference.    When the office becomes vacant the Governor's duty to appoint arises, and when he appoints his appointee is *de jure* entitled to the office until some one with a better title presents himself.    And certainly an incumbent who has only a *de facto* title—who was never even legally elected—cannot justify himself in attempting to hold on, because some one may be elected in the future, or might have been elected in the past, who, if elected, might have a legal right to supersede the present appointee of the Executive.

It is the duty of the Governor to fill a vacancy occurring on the bench of the Orphans' Court, and when he has filled it there can be no other legal incumbent.    The office is vacant, the House of Delegates has so decreed.    The Governor has appointed a suitable person to fill the vacancy. Why should his appointee then be excluded from office? Certainly if there was nothing else in the Constitution relative to this office, no question could arise as to the right of the appellant to take the office as appointee of the Executive.    But we find that sec. 12, Article 4 of the Constitution, after giving the House of Delegates sole, exclusive, entire and complete control and jurisdiction over election contests for this office, also contains the following language: "If the judgment shall be *against* the one who has been returned elected    *    *    *    *    *    *    the House of Delegates shall order a new election in thirty days."

This qualifying language of the powers given the House over certain contested election cases, the appellee claims, prevents the filling of this disputed office in any other way than by an election.    How the fact that it is the duty of the House of Delegates to order a new election, can nullify the power of that body to declare the election void we cannot see.    It seems to us very plain that sec. 12, Art. 4 of the Constitution, imposes two distinct and entirely different du-

ties upon the House of Delegates : 1st. To try the election contest and pass judgment therein. 2nd. To order a new election—it performed both—it adjudged the office vacant and it ordered a new election. The ordering of a new election could not fill the vacancy. It did not give a new title to Duvall. On the contrary, the very act of vacating the office was a condition precedent to ordering a new election. It is true that had the election taken place, the party elected would be entitled to the vacant office, but it is also true that until such election does take place the office is vacant, and it is likewise true, that " a vacancy " in that particular office must be filled by the Executive of the State. The duty to fill the office arises when the vacancy occurs, and when filled by the Governor such appointee is entitled to the office until his successor is elected, and if the election ordered by the House of Delegates never takes place, the appointee of the Governor holds until the end of the term.

Certain contingencies prevented this election from taking place at the time ordered, and the office was not filled in the way prescribed by section 12. The special means of filling the office became ineffective from accidental causes. But this by no means prevents the other mode of filling the office from being effectively used. It is not reasonable that the accidental failure to hold the election can set aside the judgment of the House that the office is vacant. The office has been vacated by a solemn judgment of the House of Delegates—a tribunal which this Court has declared (in *Brooke* v. *Widdicomb*, 39 Md. 404), to have exclusive power and jurisdiction to go behind the election returns to examine into the qualification of the voters, purge the ballot-box, and recount the votes. These things have been done. This power has been exercised—and a jurisdiction that is supreme and irrevocable in this case, has decreed that the appellee was not legally and duly elected. Why then should he keep this office any longer. The only tribunal authorized to act in this matter have said that he has no title. The only authority empowered to appoint to this office has ap-

pointed another man.    Yet he asks this Court, by a forced
and unreasonable interpretation and construction of the Con-
stitution, to arrogate to yourselves the jurisdiction of the
House of Delegates, and declare that he has a title to this
office after it has declared he has none.    He asks you to
usurp the authority of the Executive and appoint him to
this vacancy, when the right to appoint (an election having
accidentally failed to occur) is vested in the Governor alone.
Or, perhaps, he wishes this Honorable Court to constitute
itself the electorate of Anne Arundel County and elect him
Chief Judge of the Orphans' Court.    No matter what the
appellee expects, we must respectfully submit that any plain,
reasonable, common sense construction of the Constitution,
giving full and sensible effect to all the provisions bearing
upon this case, must result disastrously to the appellee's
contention.    All the provisions are in accord, unless twisted
into conflict by the ingenuity of the counsel for the appellee.

Again, the object of the contest was to decide who was
entitled to the office, and the judgment was that it was va-
cant.    The vacancy is the essential element of the judgment,
and the means of filling it is a secondary consideration in
the case.    This vacancy was not filled as directed, but public
justice demands that it should be filled, and hence the Gov-
ernor properly and legally filled it by appointment, in the
exercise of his authority to fill a vacancy, given him in sec.
40, Article 4 of the Constitution of 1867.

*Robert Moss*, for the appellee.

The appellee will contend:    (1). That there exists no
vacancy in the office of Chief Judge of the Orphans' Court
for Anne Arundel County, which the Governor is legally
authorized to fill.    (2). That the appellee being in office
holds the same and is entitled to perform its duties and
enjoy its emoluments until the election and qualification of
his successor, as provided in section 12 of Article 4 of the
Constitution of Maryland.

This section of the Constitution provides, among other

things, that in cases of contested elections for judges, clerks, etc.: " If the judgment shall be against the one who has been returned elected, or the one who has been commissioned by the Governor, the House of Delegates shall order a new election within thirty days." Thus the framers of our Constitution have provided a special method of filling a vacancy caused by the judgment of the House of Delegates, and such method of filling the vacancy is exclusive. This Court, in the case of *Cantwell* v. *Owens*, 14 Md. 215, upon an inquiry into the validity of the appointment of a justice of the peace to fill a vacancy occurring in that office, held the vacancy could not be filled by an appointment of the Governor under the general appointing power of the then Constitution, when by a particular provision of the same instrument another mode of filling the vacancy was clearly and explicity provided. This opinion of the Court has been expressly affirmed in the case of *Magruder* v. *Swann, Governor*, 25 Md. page 215. It will, therefore, be seen that section 40, of Article 4, part 5, relating to the filling of an ordinary vacancy in the office of Judge of the Orphans' Court does not apply to this case.

The appellee was in office at the time the order of the House of Delegates in the contested election case was passed, and, therefore, holds until the election and qualification of his successor. In the case of *Magruder* v. *Swann, Governor*, above quoted, the Court held that as Judge Magruder was disqualified by reason of nonage, that the incumbent, Judge Tuck, held office until the election and qualification of his successor, and no vacancy existed in said office which the Governor could fill. See also *Robb* v. *Carter*, 65 Md. 335 ; *Paine on Elections*, 195 ; 37 Cal. 288.

PAGE, J., delivered the opinion of the Court.

The facts of this case, as presented by the record and conceded by counsel at the argument, may be briefly stated as follows : At the election of 1895 Grafton Duvall and

Alfred Ijams were opposing candidates for Judge of the Orphans' Court of Anne Arundel County. Duvall was returned elected, received a commission from the Governor, duly qualified and entered upon the discharge of his duties as Chief Judge. The appellant having contested the election, the House of Delegates, at the session of 1896, passed a resolution declaring Duvall "not duly and legally elected," and ordering an election to be held on the 21st of April, 1896, in pursuance of section 12, Article 4 of the Constitution. Because of certain legislation passed at the same session this election could not be, and was not held, so that the appellee has continued to hold the office up to the present time.

On the 23d of April, 1896, the Governor, on the supposition there was no legal occupancy of the office, appointed the appellant to fill the vacancy thereby occasioned. The appellant having received the commission and taken the proper oath, demanded of the appellee the possession of the office; and this being refused, he has applied for a *mandamus* to compel the appellee to deliver the possession thereof. The application of the appellant is based upon the theory that the action of the House of Delegates made a vacancy within the meaning of the 40th section of Article 4 of the Constitution. That section, after providing for the election of Judges of the Orphans' Court, defining their powers and fixing their compensation, proceeds, "in case of a vacancy in the office of Judge of the Orphans' Court the Governor shall appoint, subject to confirmation or rejection by the Senate, some suitable person to fill the same for the residue of the term." From the bare reading of this clause, in connection with the entire section, it seems obvious the "vacancy" here referred to is a vacancy occurring after an election by the people. The section first provides for the election of three men to be Judges of the Orphans' Court. They are to be citizens of the State and residents for the twelve months preceding in the city or county in which "they may be elected, and shall have all the powers

now vested in the Orphans' Court, subject to such changes as the Legislature may prescribe." In case of a vacanay the Governor shall appoint, subject to confirmation or rejection by the Senate, "some suitable person to fill the same for the residue of the term."

It would seem to be clear that the intention here manifested, is that the Judges of the Orphans' Court are to be elected by the people; and the "vacancy" referred to is one that may occur after there has been such an election. In other words it is a vacancy created by the death, resignation or by some other cause of one or more of the "three men" who have been chosen by the qualified voters. This interpretation is supported by a fair construction of those other clauses of the Constitution which provide for cases when there has been a failure, for any cause, to obtain a legal expression of the will of the people. By section 12, Article 4, "if in any case of election for Judges, Clerks of the Courts of Law and Registers of Wills, the opposing candidates shall have an equal number of votes, it shall be the duty of the Governor to order a new election; and in case of any contested election the Governor shall send the returns to the House of Delegates, which shall judge of the election and qualification of the candidates at such election; and if the judgment shall be against the one who has been returned elected, or the one who has been commissioned by the Governor, the House of Delegates shall order a new election within thirty days." It will be observed how careful the framers of the Constitution have been to preserve to the people the right to constitute these offices. In case of a tie, the Governor cannot appoint, but must order a new election, and in case of a contest the House of Delegates cannot declare who is entitled, but must refer the whole matter back to the people at a new election to be held within thirty days.

If it be held that the judgment of the House against the one who was returned, creates a vacancy to be filled by the appointment of the Governor, then the obvious purpose of

the sections of the Constitution here cited (that the people
shall elect the Orphans' Court) is absolutely ignored. More-
over, what would logically result from such a position? If
the declaration of the House, *ipso facto*, operates to create
a vacancy, such vacancy begins and continues from the date
of the passage of the resolution.    There occurs, therefore,
a vacancy before the election can be held, and the Governor,
under sec. 40 of Art. 4, can appoint; and his appointee.
would hold " for the residue of the term ;" and all this de-
spite the clear intention of the 12th section, that in such
cases the new officer should be chosen by the people.    An
interpretation fraught with such serious and peculiar conse-
quences would violate every canon of sound construction.
Constitutions should be construed as entireties, and in
such manner as to give a meaning and full effect to each
word in the whole instrument.    *Cooley Const. Law*, 58 ;
*Thomas* v. *Owens*, 4 Md. 225.

By the 11th section Article 4 of the Constitution, election
returns are to be made to the Governor, " who shall issue
commissions to the different persons for the offices to which
they have been respectively elected ; and in all such elec-
tions the persons having the greatest number of votes shall
be declared to be elected."    Under this section it is the
duty of the Governor to issue his commission to the person,
regularly and duly returned as elected, although the elec-
tion of such person may be contested, whereby the Gov-.
ernor, under the 12th section, is required to send the re-
turns to the House of Delegates.    *Brooke* v. *Widdicomb*, 39
Md. 402 ; *Groome* v. *Gwinn*, 43 Md. 624.

The possession of such commission, and the proper quali-
fications under it confer upon the person the right to the
office.    In *Brooke* v. *Widdicomb, supra*, this Court said, " the
commission having been properly issued to the appellee, and.
he having given bond and taken the oath required by law,
there appears to us to be no valid grounds for denying to
him the right to the office    *    *    His title is not impaired
or affected by the pending contest before the House of Dele-
gates."    It must, therefore, be held that Duvall was prop-

erly in possession of the office ; and if he was he is entitled to hold it until a successor has been properly and legally appointed and qualified. *Robb* v. *Carter*, 65 Md. 334.

The resolution of the House of Delegates did not and could not name a successor ; all that was within its power was to give judgment against the incumbent and order a new election ; that it did, and the appellant now holds the office only until some other person has been legally selected and qualified to take the place. How that person is to be chosen is clearly pointed out by the 12th section. He is to be elected by the people at the " new election." That method of filling the place having been provided, it is not within the power of the Governor under the general appointing power to name him. *Cantwell* v. *Owens*, 14 Md. 215 ; *Magruder* v. *Swann*, 25 Md. 215.

In the last mentioned case this Court affirming the preceding case said, " a vacancy could not be filled by an appointment of the Governor under the general appointing power of the then Constitution, when by a particular provision of the same instrument another mode of filling the vacancy was clearly and explicitly provided."

Here, we think, there was no vacancy, Duvall holding over until his successor has been duly appointed and qualified ; but even if there was, the Governor would have no power to appoint, because by the 12th section another mode of filling the vacancy is " clearly and explicitly provided."

It has been urged that a refusal to grant this *mandamus* would operate to retain in office a person whom the House of Delegates has declared was not legally elected. But what we have said in no wise affects this declaration. It does not become us to suggest how this can be remedied. Our function is merely to expound the law, not to devise remedies. We should be open, however, to just censure if, to meet the supposed exigences of the particular case, we were to deal lightly with principles long established and approved by the eminent jurists that have preceded us.

*Order affirmed with costs.*

(Decided February 24th, 1897).