GEORGE E. BENSON *v.* EDWIN M. MELLOR, JR., CLERK OF COURT.

*Election of County Commissioners—Failure to Designate Terms —Invalidity of Election—Holding Over by Incumbents.*

Const., art. 17, known as the Fewer Elections Amendment, requiring that, of three county commissioners to be elected in 1926, two should be elected for a four years term and one for a three years term, an election at that time of three candidates, without any distinction being made as to which candidate was to fill the three years term and which candidates the four years terms, was invalid, with the result that the former incumbents held over.                                pp. 483-485

In the absence of an intention to the contrary manifested as to any particular office, all officers continue to hold their offices until they are superseded by duly commissioned and qualified

successors, whether it is or is not so provided in terms in the Constitution or statutes, and consequently the invalidity of an election does not create a vacancy to be filled by the appointing power.                                      pp. 485-492

*Decided February 17th, 1927.*

Appeal from the Circuit Court for Carroll County (PARKE, C. J., FORSYTHE, and MOSS, JJ.).

Petition for mandamus by George E. Benson against Edwin M. Mellor, Jr., Clerk of the Circuit Court for Carroll County. From an order denying the writ, petitioner appeals. Affirmed.

The cause was argued before BOYD, C. J., URNER, OFFUTT, DIGGES, and SLOAN, JJ.

*William L. Rawls,* with whom was *Edward O. Weant* on the brief, for the appellant.

*Alexander Armstrong* and *William C. Coleman,* with whom were *Theo. F. Brown* and *W. L. Seabrook* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The question to be decided on this appeal is whether, upon a failure to elect to the offices of County Commissioners of Carroll County at the general election of November, 1926, those offices became vacant within the meaning of the constitutional provision for appointments by the Governor to fill vacancies. At that election three commissioners were to be elected for terms of different lengths, two for four-year terms and one for a three-year term, and all nominations and elections were made without distinguishing which candidate was to fill the three-year term, and which the four-year terms, and the Governor was advised that there had been no complete, valid election, that, as a result, the

offices were left vacant, and that he was under the necessity of appointing officers to fill the vacancies. The appellants were then appointed, but the existence of vacancies calling for such appointments having been questioned meanwhile, the clerk of the Circuit Court for Carroll County declined to swear them in as appointees until the question should be settled. The appellants then filed petitions for writs of mandamus to direct the clerk to swear them in. The trial court, after having heard arguments, concluded that there were no vacancies in the offices and dismissed the petitions. And the petitioners have appealed from the dismissal. We have come to the conclusion that the action must be affirmed.

The situation which was to be dealt with at the election arose in the transition from terms of office under the older constitutional and statutory provisions to terms under article 17 of the State Constitution, commonly known as the "Fewer Elections Amendment," ratified in 1922. And, more specifically stated, the question to be decided is whether, after a failure to elect their successors, commissioners holding office under the older law continued to hold office after the annual election of November, 1926, and by doing so prevented vacancies.

Article 7, section 1, of the Constitution, as it stood prior to the adoption of the Fewer Elections Amendment, provided that county commissioners should "be elected at such times, in such numbers, and for such periods not exceeding six years, as may be prescribed by law." And in pursuance of this provision, it was enacted by the Act of 1892, chapter 290, that there should be three commissioners for Carroll County, each holding office "for a term of six years," but the three terms to overlap so that one term should expire and there should be an election of a commissioner to enter upon a new, succeeding term, every two years. Under these provisions, one commissioner was elected in 1917 for six years, or until the election of 1923; another, Charles W. Melville, was elected in 1919 for six years ending in 1925, and another, John H. Repp, was elected in 1921 for six years end-

ing in 1927; and the three offices were thus filled when the Fewer Elections Amendment was adopted in 1922. The plan of this amendment was that all state and county officers, with exceptions irrelevant here, should hold office for four years, and that all the four-year terms should have common beginnings and endings, at the same elections. There was to be no further overlapping of terms. And the first common starting point was to be the election in November, 1926. It was further planned, and provided, that there should be no interference with existing terms of office in bringing all terms ultimately to common beginning points; and to effectuate this, it was provided by the amendment that terms to end under the previous law at an election in 1925 should be extended to the election now to be held in 1926, that terms to end after 1926, that is, in November, 1927, should continue to that time, and that officers for the terms succeeding those should be elected in 1926 for the three years from November, 1927, to November, 1930. New terms of office to begin after the adoption of the amendment and before 1926, that is at the election of 1923, were curtailed to three years, to bring up to the general starting point of the election of November, 1926. Const., art. 17, secs. 1, 2, 3 and 5. And, following out the scheme so adopted, the filling of the offices of County Commissioners of Carroll County proceeded thus after 1922: At the election of 1923, John W. Reaver was elected for a term of three years, or to 1926; Mr. Melville, finishing his six-year term, under the old law, in 1925, continued to hold for the additional year to November, 1926, and Mr. Repp held a term which was to run its full course to November, 1927. And, therefore, at the election of 1926, the terms to be filled were two terms of four years to follow those of Mr. Melville and Mr. Reaver, and one term of three years to follow the term of Mr. Repp after 1927. All authorities agree that for an election to such different terms there must be distinct choices made for the one term and the other, or there would be no complete, valid election. If there are no distinct choices, then it is not deter-

mined which candidates shall fill which terms, and the election has accomplished nothing. *Page v. Kuykendall,* 161 Ill. 319; *In re Gilleland,* 96 Pa. St. 222; *Edes v. Haley,* 94 Wash. 232. Nevertheless, in this instance, all candidates alike were nominated, and the votes were cast, without the necessary distinction, Mr. Melville, Mr. Benson, and Mr. Harner having received the highest number of votes merely "for the office of County Commissioner of Carroll County." And the result is, in our opinion, a failure to elect. The view that all three terms might be considered as having been made regular four-year terms, and the necessity of electing to separate terms removed, by a constructive resignation or abandonment by Mr. Repp of his right to continue in his old term to 1927, we find ourselves unable to adopt because of the explicit provision in the Constitution that there should be an election of one commissioner for only three years to begin after November, 1927. This provision, it seems to us, must be followed irrespective of any action by Mr. Repp. The provision makes no reference to persons; it defines the terms.

Proceeding on the supposition that the election was invalid, then, did the failure to elect result in vacancies in the offices within the meaning of the law authorizing the Governor to fill vacancies by appointments? That law is contained in section 4 of article 25 of the Code of Public General Laws, and it provides specifically that, "In case any office of county commissioner shall become vacant in any county by death, resignation or otherwise, the governor" shall appoint to fill the vacancy as he has appointed in this instance. And, as has been said, the question of the existence of a vacancy to be filled under this section depends upon the further question, or we might say it is the question, whether the old incumbents continue to fill the offices and prevent vacancies. Are they to hold until their successors are elected and qualified, and, if so, is their holding over a filling of the offices which saves them from being vacant? The Act of 1892, chapter 290, under which they took office originally, provided only

that they should "hold office for a term of six years." Section 1 of the Fewer Elections Amendment (article 17), by way of contrast, provides that "all county officers elected by qualified voters shall hold office for terms of four years, and until their successors shall qualify." Section 3 of the amendment, again, after providing for limiting the terms of officers to be elected in 1923 to three years and so bringing the terms to the common starting points, adds that all elected thereafter shall hold for four-year terms, without referring to holding over until the qualification of successors. If the incumbents before the election of 1926 hold over for any purpose, it is not, therefore, by reason of any express provision of law for their doing so; it must be by virtue of a general principle which governs irrespective of the existence of such an express provision. The view widely held by the courts of this country is that there is such a principle, that holding over by incumbents until their successors qualify is always intended by the law whether there is an express provision for it or not, unless, indeed, a contrary intention should be manifested with respect to any particular office. An express provision for holding over by some officers is not construed as manifesting an intention that other officers shall not hold over in the absence of an express provision for it. And this we take to be the general understanding. It is at least assumed generally that an officer elected to a definite term of years, such as six years, is to hold office until his successor is elected in ordinary course, although, as the date of election under our system may vary from the 2d day of November to the 8th, an incumbent's exact term of years might expire in some instances six days before the election of a new officer. And it has long been established in this state, as elsewhere, that an officer regularly holds over in office beyond the election to the qualification of his successor, because it could not be supposed that the law intended offices to be vacant after every election during the time that must necessarily elapse before the returns are canvassed, the result is certified, and the new officers are commissioned and qualified. We find the rule to be that, in the absence of an intention mani-

fested to the contrary, all officers continue to hold their offices
until they are superseded by duly commissioned and quali-
fied successors, whether it is or is not so provided in terms in
the constitution or statutes. "Even without such a provi-
sion," says *Dillon on Municipal Corporations* (5th Ed.),
secs. 411, 412, "the American courts have not adopted the
strict rule of the English corporations which disables the
mayor or chief officer from holding beyond the charter or
election day, but rather the analogy of the other corporate
officers who hold over until their successors are elected un-
less the legislative intent to the contrary is manifested. * * *
Where they are elected 'for the year ensuing,' and the char-
ter or organic law contains no restrictive clause, the officers
may continue to hold and exercise their offices, after the ex-
piration of the year, until they are superseded by the election
of other persons in their places." See authorities collected
in a note, 50 *L. R. A.* (N. S.) 364. And in *Lynn v. Cum-
berland,* 77 Md. 449, 454, Judge McSherry said: "The
Maryland cases from *Thomas v. Owens,* 4 Md. 221, to *Robb
v. Carter,* 65 Md. 321, and *Archer's Case,* 74 Md. 427, uni-
formly hold that even where an officer has been appointed for
a definite term, he is entitled to hold after the expiration
thereof until his successor is elected and qualifies—the sup-
eradded period being in fact a part of his rightful term of
office."

The Maryland decisions are not without some conflicting
statements on the question, however, and the arguments at the
bar in this case have largely followed the statements on one
side and the other. In *Thomas v. Owens,* 4 Md. 189; *Sap-
pington v. Scott,* 14 Md. 40; *Robb v. Carter,* 65 Md. 321;
and *Ijams v. Duvall,* 85 Md. 252, it was decided, upon what
seem to be compelling reasons, that incumbents in office right-
fully hold over and perform the duties of their offices until
the qualification of their successors, although the law may
contain no express provisions for it. And in *Lynn v. Cum-
berland,* 77 Md. 449, 454, and *Ash v. McVey,* 85 Md. 119,
although the court was dealing with express provisions for
holding over, it again stated the principle of the cases last

cited as generally applicable. In the case of *Smoot v. Somerville,* 59 Md. 84, however, there was a statement in conflict with this principle. There, too, the court was dealing with an express provision for holding over, by a tobacco inspector, until his successor qualified, and it was remarked in the opinion (page 88) : "It has been contended that, inasmuch as the term of office of tobacco inspectors commences on the first Monday in March and is to continue two years, a vacancy occurs immediately upon the expiration of the term of two years; and such would be the case were it not for the further provision of section 13, by which all officers are to continue in office, until their successors, respectively, qualify according to law." In *Robb v. Carter,* 65 Md. 321, where the contrary principle was applied, the court said: "In *Smoot v. Somerville,* 59 Md. 84, the question in controversy was whether a vacancy had occurred which authorized the exercise of the appointing power, and the casual expression in the opinion of the court was not introduced for the purpose of deciding any question then presented for adjudication." But, again, in *Claude v. Wayson,* 118 Md. 477, where an intention to preclude a holding over by justices of the peace was found to have been manifested by the omission of a former express provision for it, the remark in *Smoot v. Somerville* was quoted. We find that remark, however, to be at variance with the law as laid down in the many cases here and elsewhere in which the courts have had to consider holding over by officers without any express provision for it, and without any prohibition of it. In the case of *Claude v. Wayson,* too, the court said the absence of an express provision in the Constitution for holding over by some particular officers there mentioned might be explained "by the fact that the authorities are almost unanimous in holding that if a constitution or statute, without expressly fixing the term of office, merely provides that there shall be an election or appointment annually or at stated periods, the one so elected holds over until his successor qualifies."

In all Maryland cases in which the exact question has been dealt with, the conclusion has, as Judge McSherry said

in *Lynn v. Cumberland, supra,* uniformly been that "even where an officer has been appointed for a definite term, he is entitled to hold after the expiration thereof until his successor is elected and qualified." And this rule, as has been said, seems to us to be supported by compelling reasons. The opposite construction of the law, our predecessors said in *Sappington v. Scott,* 14 Md. 40, if correct with regard to the tenure of office by the officer then under discussion, a register of wills, "must with equal propriety, be applicable to all elective officers, where the Constitution has not, in express terms, provided that they are to continue in office until their successors shall be elected and qualified. The effect of which would be, that each of those offices must, periodically, have no incumbent, authorized to discharge any of the duties thereof, no matter how important the duties may be, or how urgent the necessity for speedy action. In framing the organic law, by which the government itself was to be kept in operation and regulated, we cannot suppose there was a deliberate intention to make provisions, which should be so construed as to produce a necessary periodical interregnum, in each one of several highly important offices."

As to the nature and effect of this holding over, we have two previous decisions by this court. In *Smoot v. Somerville,* already considered in part, Somerville held the office of tobacco inspector by appointment for two years, and was, under an express provision of law, to hold over until his successor qualified. The appointment of his successor having failed of confirmation at the next legislative session, the Governor appointed Smoot to fill a supposed vacancy in the office, during recess of the General Assembly, but it was held that as Somerville held over under an express statutory provision there was no vacancy to be filled by appointment. The holding over, therefore, was construed to be a filling of the office inconsistent with a vacancy. There would seem to be no distinction in this respect between a holding over under express authority and a holding over without it; the holding over is in each instance of the same nature, and the effect

and consequences would seem to be the same. Judge Mc-Sherry, in the opinion in *Lynn v. Cumberland,* page 454, already quoted, described "'the superadded period" of an officer holding over upon the principle followed in *Thomas v. Owens* and *Robb v. Carter, supra,* as "being in fact a part of his rightful term of office." And such a holding over was held to preclude a vacancy in *Ijams v. Duvall,* 85 Md. 252. In that case, Duvall was, in 1895, elected, commissioned and qualified as chief judge of the Orphans' Court of Anne Arundel County, but at the next session of the General Assembly, in 1896, the election was contested and declared void. The Governor then appointed Ijams to fill a supposed vacancy in the office. But Duvall, having been commissioned and qualified, was rightfully holding the office, and was held, under the principle previously stated, and upon the authority of *Robb v. Carter, supra,* entitled to hold it until his successor should be qualified. And this being true, the court said, there was no vacancy to be filled. "The possession of such commission, and the proper qualifications under it confer upon the person the right to the office. In *Brooke v. Widdicomb* (39 Md. 402), this court said, 'The commission having been properly issued to the appellee, and he having given bond and taken the oath required by law, there appears to us to be no valid grounds for denying him the right to the office. * * * His title is not impaired or affected by the pending contest before the House of Delegates.' It must, therefore, be held that Duvall was properly in possession of the office; and if he was, he is entitled to hold it until a successor has been properly and legally appointed and qualified. *Robb v. Carter,* 65 Md. 334. * * * Here, we think, there was no vacancy, Duvall holding over until his successor has been duly appointed and qualified; but even if there was, the Governor would have no power to appoint, because by the 12th section another mode of filling the vacancy is 'clearly and explicitly provided.'" These authorities seem to us conclusive.

It has been emphasized here, as in earlier cases, that such an effect given to the holding over by an incumbent would sometimes keep in office a man who is not the choice of the electors, but this consideration cannot alter the rule. In *Ijams v. Duvall, supra,* the court replied to a like argument: "It has been urged that a refusal to grant this mandamus would operate to retain in office a person whom the House of Delegates has declared was not legally elected. But what we have said in no wise affects this declaration. It does not become us to suggest how this can be remedied. Our function is merely to expound the law, not to devise remedies. We should be open, however, to just censure if, to meet the supposed exigencies of the particular case, we were to deal lightly with principles long established and approved by the eminent jurists that have preceded us."

The controlling, if not the sole, consideration has been that the law requires, in the public interest, that the offices be filled at all times, without interruption, and to this end the intention and understanding that incumbents shall hold until their successors qualify, has grown up and taken position as part of the law; and according to the law as it has been laid down for us, it is upon this provision or rule that dependence is placed primarily for having the offices continuously filled, notwithstanding any delay or failure in the election of successors in ordinary course. And so long as the offices are so filled the exigency which requires or authorizes resort to the Governor's power to fill vacancies by appointment does not exist. This conclusion appears to prevail with many courts in other jurisdictions, too. The compiler of authorities on the subject in a note, 50 *L. R. A.* (N. S.) 372, says, "In a number of cases it has been held that if the person elected to the office in ineligible, or the election was illegal, there is no vacancy for the appointing power to fill if the preceding incumbent was entitled to hold over until his successor was elected and qualified. * * * In a few cases, however, it has been held that if the person receiving the highest number of votes at an election was in-

eligible for the office, or if the election was illegal, there is a vacancy at the beginning of the term, to which an appointment may be made, although the incumbent was entitled to hold until his successor was elected and qualified."

Our conclusion is that the election for County Commissioners of Carroll County in November, 1926, was invalid, and that as a result the persons then holding the offices, Mr. Melville, Mr. Reaver, and Mr. Repp, are entitled to hold over until their successors are duly elected and qualified, and that this being so there were no vacancies in the offices, and the appellant could not take office as appointee to fill a vacancy. That conclusion, of course, requires that the petition be dismissed.

> *Order affirmed, with costs to the appellee.*

PATTISON and ADKINS, JJ., who did not sit at the argument of this case, have, at the request of counsel, participated in the subsequent study and discussion, and they concur in the opinion.