Dear Howard E. White
You have requested our interpretation of Annotated Code of Maryland, Health Occupations Article ("HO"), § 9-202(g), which governs the term of a member of the State Board of Examiners of Nursing Home Administrators ("Board"). Among other things, that statute provides that a term is four years and that a member of the Board "may not serve more than 2 consecutive full terms." You ask how this provision applies to a member who was first appointed to the Board at some time after the end of the predecessor's term and then reappointed to a consecutive term. In particular, you ask whether such a member is eligible for appointment to another consecutive term.
The member's eligibility for reappointment depends on whether the member's initial appointment to the Board counts as a "full term." If so, the member is ineligible for reappointment. If not, the member may be appointed to another term. In our opinion, whether an initial appointment constitutes service of a "full term" is determined as follows: When a member of a State board or commission is appointed to a vacancy created by the expiration of a prior term, even if the appointment is made after the end of the prior term, such service counts as a "full term." By contrast, if a member is appointed to a board or commission part way into a term as a result of the death or resignation of the individual previously appointed to that term, such service does not count as a "full term" because the member has shared the term with the prior appointee to that term. *Page 60 
 I Statutory Background
A. State Board of Examiners of Nursing Home Administrators
The Board is responsible for adopting standards for licensing nursing home administrators, for devising examinations and adopting investigative procedures to assure that licensees meet the Board's standards, and for conducting a continuing study and investigation of nursing homes and administrators to improve licensing standards and procedures for enforcing those standards. HO § 9-205. The Board issues licenses to applicants who satisfy the legal requirements. HO § 9-308. It is to investigate and take action against any licensee who fails to meet its standards. HO § 9-314.
The Board consists of 11 members appointed by the Governor. HO § 9-202(a), (b). With respect to the tenure of Board members, the statute provides as follows:
 (1) The term of a member is 4 years.
 (2) The terms of members are staggered as required by the term s provided for members of the Board on July 1, 1981.
 (3) At the end of a term, a member continues to serve until a successor is appointed and qualifies.
 (4) A member who is appointed after a term has begun serves only for the rest of the term and until a successor is appointed and qualifies.
 (5) A member may not serve more than 2 consecutive full terms.
 (6) To the extent practicable, the Governor shall fill any vacancy on the Board within 60 days of the date of the vacancy.
HO § 9-202(g).
B. Other Term Limit Provisions
The term limit set forth in HO § 9-202(g)(5) is not unusual. The Legislature has set similar limits on the terms of members of *Page 61 
most State boards and commissions. For example, the enabling laws in the Health Occupations Article for other State boards that license and regulate the conduct of health professions each state that a member may not serve more than two "consecutive full terms."[1] Similarly, the laws governing other State boards and commissions also use identical or similar language.[2] In addition, legislation creating more than 40 other State boards and commissions provides, without including the adjective "full," that a member may not serve more than a specified number of consecutive terms. See, e.g., Business Occupations 
Professions Article, § 4-202 (prescribing the membership of the State Board of Barbers and providing that "[a] member may not serve more than 2 consecutive terms").
 II Analysis
You have asked about the application of the term limit in HO § 9-202(g)(5), which prohibits a member of the Board from serving *Page 62 
more than two consecutive full terms. You state that two members of the Board were each appointed to the Board at some time after the end of the terms of their respective predecessors[3] and that both of these members were later reappointed to consecutive terms that will expire in the near future. You have been informed by the Governor's Office of Appointments and Executive Nominations that these members are not eligible for reappointment when their most recent terms end.[4] You state that there have been past instances in which a member initially served a partial term and was reappointed to two consecutive full terms in addition to the partial term. You ask that we clarify the application of the term-limit provision.
When called upon to construe similar term-limit provisions for members of State boards and commissions in the past, this Office has distinguished two situations in which a new board member commences service sometime after the expiration of a prior term. We illustrate these situations with two hypothetical scenarios.
In the first scenario, the term of board member X ends in accordance with the statute. However, the Governor does not immediately appoint a successor and X "holds over" — pursuant to a statutory holdover provision like HO § 9-202(g)(3) or under the common law holdover doctrine[5] — as a board member for period of time extending into what would otherwise be the new term. Eventually, the Governor appoints Y to the position and, once Y qualifies, X no longer holds over and leaves the board.[6] Assuming Y continues to serve for the rest of that term, we have advised that *Page 63 
Y should be credited with the "full term," as neither X nor anyone else served the new term (X simply "held over" from the prior term).See, e.g., Letter of Assistant Attorney General Kathryn M. Rowe to Senator Donald F. Munson (June 10, 1998) ("Munson Letter").[7]
In the second scenario, the term of board member X ends in accordance with the statute and the Governor appoints Y as X's successor for the new term. However, part way into the new term, Y either dies or resigns from the board. The Governor then appoints Z to serve the remainder of the new term. In those circumstances, where Y and Z have shared the new term, we have advised that Z should not be credited with a "full term."See, e.g., Munson Letter (service in the prior term would not count where the officer was appointed to serve out the remainder of an expired term that became vacant due to death or resignation); Letter of Assistant Attorney General Richard E. Israel to Delegate K enneth E. Schisler (M arch 7, 2001) (town commissioner who had been chosen to fill mid-term vacancy in a special election and then reelected to consecutive term could seek an additional term without violating two-term limit provision in town charter); Letter of Assistant Attorney General Richard E. Israel to M. Elizabeth Lewandowski (September 25, 1980) (school board member who served part of unexpired term of another member and one full term was eligible for reappointment under two-term limit provision).[8]
In sum, the key distinction between the two scenarios is that the new appointee was the sole occupant of the appointee's first term in scenario one, but shared the first term with another appointee in scenario two. We have thus advised that an appointee who was the sole occupant of a position on a board during a term is credited a "full" term, even if his or her appointment was delayed and the *Page 64 
predecessor held over for a period of time. By contrast, if the appointee succeeded another individual who was initially appointed to that term, the appointee has served only a partial term, and is not credited with a full term.[9]
You suggest a different interpretation — that the use of term "full" in the statute essentially means "four years." Under that view, a member whose initial appointment is delayed until sometime after the expiration of the prior term while the predecessor holds over w ould be not considered to have served an initial full term, but rather apartial term. Thus, the member could serve two additional consecutive terms. Indeed, a member would only be prohibited from serving two additional terms if he or she first began serving on the board immediately upon commencement of the initial term.
The choice between the past advice of this Office — which looked to whether the member shared a term with another appointee — and the alternate interpretation you pose — which looks to the length of service of the member — is, of course, a matter of statutory construction. The cardinal rule of statutory construction is to ascertain and carry out the intent of the Legislatu re . State v. P agano, 341 Md. 129, 133,669 A.2d 1339 (1996). One starts with the statutory language. Waters v.Pleasant Manor Nursing Home, 361 Md. 82, 103, 760 A.2d 663 (2000). When that language is susceptible of more than one meaning, courts consider not only the literal or usual meaning of the words but also the meaning of words *Page 65 
in light of the statute as a whole and within the context of the objectives and purposes of the enactment. Romm v. Flax, 340 Md. 690,693, 668 A.2d 1 (1995).
The language of the term-limit provision is not definitive. It might be argued that "full term," when the length of a term is four years, means "service of four years in the term." However, if the Legislature had intended "full term" to mean "service of four years," it could have easily have included length of service in the term-limit provision. Moreover, it is evident from the statute that the Legislature contemplated what is typically the case — that there will be some delay between the occurrence of a vacancy and the filling of that vacancy. In particular, the statute provides that, when a term ends, the successor should be appointed promptly, although not necessarily immediately upon the end of the prior term. See HO § 9-202(g)(6) ("to the extent practicable" Governor is to fill a vacancy within 60 days). In the meantime, the predecessor is authorized to hold over. HO § 9-202(g)(3). A belated appointment has no effect on the length of the term. HO § 9-202(g)(4) (member appointed after term has begun serves only for the rest of the term and until a successor qualifies). There is no indication in the statute that a period of delay between the end of a predecessor's term and the appointment of the successor would by itself dramatically increase the prospective tenure of the successor by rendering the appointee eligible for an additional term.
The term-limit provision that now appears in HO § 9-202(g)(5) has been part of the Board's enabling law since its inception in 1970.See Chapter 262, Laws of Maryland 1970. While there is no legislative history available for that time period, such provisions are usually intended to "avoid the temptation to use the office improperly in an attempt to sustain tenure." See No te, C onstruction and effect ofconstitutional or statutory provisions disqualifying one for publicoffice because of previous tenure of office, 59 A.L.R.2d 716, § 2(a) (1958 2007 Supp.).
Some years later the General Assembly reenacted HO § 9-202(g)(5) in a bill in which it added identical term-limit provisions to all of the other professions regulated under the Health Occupations Article that lacked such a provision. Chapter 434, Laws of Maryland 1992. The rationale for the 1992 bill was that "[b]y limiting the term of membership, the bill seeks to infuse the boards with new members having different expertise and to afford a greater opportunity for a balance in membership on the basis of geography, race, and gender." Floor Report of Senate Economic and Environmental Affairs Committee of House Bill 56 (1992). Thus, the legislative history of the parallel term-limit provisions in the *Page 66 
Health Occupations Article indicates a legislative preference for a periodic turnover in the membership of the regulatory boards.
We believe that the past construction of HO § 9-202(g)(5) and similar term-limit provisions by this Office is more consistent with the legislative purpose than an interpretation that would equate "full term" with "service of four years in a term." Construing "full term" to mean "service of four years" would allow for manipulation of the term limit provision by the appointing authority. For example, if the appointing authority were to delay by a day the initial appointment of a member subject to a two-term limit, the member could essentially serve three terms.[10] By contrast, an initial partial term that is the result of the death or resignation of the individual originally appointed to the term is unlikely to be the product of manipulation by the appointing authority.
Courts have been reluctant to construe the word "full" in term-limit provisions in a manner that would permit manipulation of the provision contrary to the evident legislativ e purpose. See Z ickefoo se v.West, 145 W.Va. 498, 508-10, 116 S.E.2d 398 (1960) (state constitutional provision limiting sheriff to "two consecutive full terms" could not be circumvented through resignation of sheriff shortly before end of second term); cf. Schweisinger v. Jones, 68 Cal. App. 4th 1320, 1326-27, 81
Cal. Rptr. 2d. 183 (1998) (term-limit provision would not be interpreted in a way that would allow a "loophole," an "absurd result," and a "wholesale evasion" of the statute); Stephens v. Myers, 690 P.2d 444
(N.M. 1984) (sheriff who had been elected to two full terms but resigned in the middle of one term and was reappointed eight minutes later held ineligible for second term under provision limiting sheriffs to two terms).
Finally, consistent with the past advice of this Office, the Governor's Office of Appointments and Executive Nominations has applied similar term-limit provisions to count a board member's service for a period less than four years as a full term, unless the member succeeded another appointee to the same term as a result of a resignation or death. The longstanding application of term-limit provisions by the State's chief executive, as the appointing authority for most members of agency boards and commissions, is entitled to great deference. SeeBaltimore Gas Electric Co. v. Public Serv. Comm'n, 305 Md. 145,161-62, 501 A.2d 1307 (1986). Moreover, *Page 67 
the Legislature has reenacted term-limit provisions containing such language in recent years without modification. See, e.g., Chapter 252, Laws of Maryland 2003 (State Board of Physicians). Thus, it is presumed to know and have acquiesced in this longstanding construction of this term-limit language. See Public Service Commission v. Howard Researchand Development Corp., 271 Md. 141, 152, 314 A.2d 682 (1974).
 III Conclusion
In our opinion, the limitation set forth in HO § 9-202(g)(5) that prohibits an individual from serving more than "tw o consecutive full terms" should be applied as follows. If a member is appointed to a vacancy created by the expiration of a prior term, even if the appointment is made after the end of the prior term, such service counts as a "full term." By contrast, if the member is appointed part way into a term as a result of the death or resignation of the individual previously appointed to that term, such service does not count as a "full term." In our view, the critical distinction is whether the member shared the particular term with another appointee. Although one might argue that any service of less than four years is not a "full term," the interpretation outlined above is more consistent with the purpose of term-limit provisions and less subject to manipulation by an appointing authority. Moreover, this construction has been applied to other term-limit provisions by appointing authorities, with the acquiescence of the Legislature, for many years.
 Douglas F. Gansler Attorney General
 Mark J. Davis Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] See, e.g., HO § 1A-202 (acupuncturists); § 2-202 (audiologists, hearing aid dispensers, and speech-language pathologists); § 3-202 (chiropractors); § 4-202 (dentists); § 5-202 (dietitian-nutritionists); § 7-202(morticians and funeral directors); § 8-202 (nurses); § 8-6B-05 (electrologists); § 10-202 (occupational therapists); § 11-202 (optometrists); § 12-202 (pharmacists); § 13-202 (physical therapists); § 14-202 (physicians); § 14-5B-05 (radiation oncology/therapy, medical radiation, and nuclear medicine technologists); § 16-202 (podiatrists); § 17-202 (professional counselors and therapists); § 18-202 (psychologists); § 19-202 (social workers); § 20-202 (residential child care program administrators).
[2] See, e.g., Agriculture Article, § 2-504.1 (Maryland Agricultural Land Preservation Foundation); Business Occupations Professions Article § 8-202 (State Board of Certified Interior Designers); Education Article ("ED") § 3-108.1 (Baltimore City Board of School Commissioners); ED § 8-705 (Residential Boarding Education Program); ED § 11-102 (Md. Higher Education Commission); ED § 12-202 (Board of Regents of the University System of Md.); ED § 13-304 (Board of Directors of University of Md. Medical System); ED § 16-504 (Board of Trustees of Baltimore City Community College); ED § 16-604 (Board of Trustees of College of Southern Md.); ED § 24-303 (Southern Md. Higher Education Center); ED § 24-505 (Historic St. Mary's City Commission); Health-General Article, § 5-804 (Mortality Review Committee); Human Services Article, § 3-501
(boards of local departments of social services); Article 25, § 3
(Charles County Commissioners); Article 28, § 2-102 (Maryland-National Capital Park and Planning Commission); Article 83A, § 5-2B-04 (Stem Cell Research Commission).
[3] You state that both members were first appointed by the Governor to serve the remainder of terms that began in April 2000. One member's appointment letter was dated May 10, 2001; the other's was dated January 3, 2001.
[4] Of course, under the statute and the common law holdover doctrine, both of these members continue to serve on the Board until a successor is appointed and qualifies. HO § 9-202(g)(3); Benson v. Mellor,152 Md. 481, 491, 137 A. 294 (1927).
[5] See Benson v. Mellor, 152 Md. 481, 491, 137 A. 294 (1927) ("The controlling . . . consideration has been that the law requires, in the public interest, that the offices be filled at all times, without interruption, and to this end the intention and understanding that incumbents shall hold over until their successors qualify, has grown up and taken position as part of the law").
[6] Of course, X may choose to resign earlier, even though the law permits X to remain on the board as a holdover member until Y is appointed and qualifies.
[7] That advice letter construed Annotated Code of Maryland, Article 27, § 255C(c)(6), now codified at Criminal Law Article § 13-2416(e), which provided that "[a] member of the [Washington County Gaming] Commission may not be reappointed within 5 years after completion of two 2-year terms."
[8] This advice letter construed a two-term limitation for school board members set forth in Education Article § 3-108(c). It concluded that, "although a member can only serve two such fixed terms, in succession, a member might also serve part of the term of another member." The Attorney General of Connecticut reached a similar conclusion in construing the phrases "two full consecutive terms" and "two consecutive full terms" in term limit provisions in that state. 1988 Conn. Op. Atty. Gen. 32 (January 28, 1988), 1988 WL 483552 at *2 ("a person serving a maximum of two consecutive full terms may serve two four-year terms plus the remainder of another's term") (emphasis added).
[9] A third scenario occurs when, as part of a plan to stagger the terms of board members, the initial terms of some members are abbreviated by law. In that scenario this Office has made a distinction between term-limit provisions that limit a member to "consecutive terms" and those that limit a member to "consecutive full terms." Where the Legislature itself has shortened the term of a board member for staggering purposes, has simultaneously limited service to "two consecutive full terms," and has not otherwise indicated how the shortened term should be treated, we have advised that it does not count as a "full term" for purposes of term limits. See Letter of Assistant Attorney General Kathryn M. Rowe to Pat Joyce, Governor's Appointments Office (July 22, 1992). For example, the predecessor of HO § 9-202(g), when originally enacted, provided for initial shortened "terms" for six members for staggering purposes and simultaneously limited service to no "more than two consecutive full terms." See Chapter 262, Laws of Maryland 1970.
By contrast, when a term limit provision bars appointment to more than "two consecutive terms" without including the adjective "full," this Office has advised that an "initial term" shortened for staggering purposes counted as one of those "terms." 62 Opinions of the AttorneyGeneral 486 (1977).
[10] Such an interpretation might allow other ways to circumvent the statutory term limits. For example, if the appointing authority were to delay reappointment of a member to a second term while the member held over from the first term, there would be a question whether the second term actually counted as a "full term." *Page 68