## CHARLES IZER *vs.* STATE OF MARYLAND.

*Perjury before Grand jury—Authority of de facto Clerk to Administer oath to Witness.*

A person who has knowingly, wilfully, and maliciously sworn falsely in giving testimony before a grand jury, may be indicted and tried for perjury, as the grand jurors before whom he has testified falsely are competent witnesses against him; the obligation of secrecy imposed on them not being permitted to be made the means to defeat the punishment of crime, or obstruct the administration of justice.

Where a person had been in the undisputed possession of the office of deputy clerk of the Court for some years, and had openly and notoriously discharged the duties pertaining thereto, he was at least a *de facto* officer, filling a *de jure* office, and although there may have been some defect and irregularity in the manner of his appointment or qualification, his acts done under color of title, would, upon grounds of public policy and necessity be valid, and he could legally administer an oath to a witness.

APPEAL from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court.

The cause was argued for the appellant before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, McSHERRY, and BRISCOE, J., and submitted on brief for the appellee.

*R. T. Semmes,* for the appellant.

*John Prentiss Poe, Attorney-General,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

The appellant was indicted by the grand jury of Alleghany County for perjury. He demurred to the indict-

ment and upon the demurrer being overruled he pleaded
not guilty and was put upon his trial, during the pro-
gress of which he reserved five exceptions to rulings of
the Court on the admissibility of evidence.   Having
been convicted by the verdict of a jury, and subsequently
sentenced to confinement in the penitentiary, he entered
an appeal, which has brought the case here under the
*Act of* 1892, *ch.* 506.

The indictment alleges in substance that Izer had
been regularly summoned and duly sworn to testify
before the grand jury of Alleghany County, and that
when interrogated by them he corruptly, knowingly,
wilfully and maliciously swore falsely in reference to a
subject-matter fully set forth in the indictment and
then being investigated by the grand jury, and that
he then and there committed the crime of perjury.
The single question raised by the demurrer and also
sought to be presented by two of the exceptions is this:
Can a person who has corruptly, knowingly, wilfully
and maliciously sworn falsely in giving testimony before
a grand jury be indicted and tried for perjury?   The
appellant insists that he cannot, and his counsel bases that
contention on the ground of public policy.   The argu-
ment briefly stated is:   To convict a witness of perjury
for testifying falsely before the grand jury, the jurors
must disclose what transpired in the jury room; but it
is against public policy to allow a grand juror to dis-
close what transpired in the grand jury room; therefore,
no matter how clear the perjury may be, no member of
the grand jury is competent to give evidence of it, and
consequently, as no one else can be cognizant of it, no
presentment can be found and no prosecution can be
maintained at all.   But this is obviously fallacious.
The authority which, to promote the public welfare, has
imposed upon grand jurors the obligation of secrecy may,
when the same public welfare requires it, dispense with

its observance. The law, for wise reasons, has imposed upon grand jurors the obligation of secrecy, and for equally wise reasons, it has in certain cases, but only upon its own express command, and within clearly defined limits, dispensed with the literal observance of the obligation. The oath of the grand juror undoubtedly precludes him for all time from voluntarily, and of his own motion, or at his own instance, divulging the counsels of the State, his fellows or his own; but there is in the very nature of things a tacit condition implied that, in the furtherance of justice, the juror shall, in some instances, speak when the law through its constituted tribunals, explicitly commands him to do so. As a consequence, notwithstanding his oath of secrecy, he may, with a view of contradicting a witness, be required to disclose in open Court what the witness testified to before the grand jury; and it is neither a violation of his oath nor against public policy for him, when thus called on, to repeat the witness' testimony. So, also, he may testify as to whether a particular person gave any evidence or was examined at all before the grand jury. *Commonwealth vs. Hill,* 11 *Cush.,* 137. To give no further illustrations it is sufficiently apparent from those just alluded to that the proposition, that it is against public policy for a grand juror to disclose what transpired in the jury room, is stated too broadly in the argument, and of course the conclusion deduced therefrom is unsound.

Both upon principle and authority it is clear that an indictment for perjury committed before the grand jury may be found and supported upon the testimony of members of that body. If this were not so, it would, in many instances, be but an idle form to swear witnesses to testify to the truth before the grand jury. The guilty would often escape indictment by the deliberate utterance of falsehood by witnesses, and the unoffending might, by the same means, be subjected to wanton pros-

ecutions if the perjurer were by the law of the land shielded from all punishment. Investigations by grand juries would be without value. The secrecy of the proceeding and the guaranteed immunity from punishment would stimulate perjury and multiply false witnesses. If witnesses who testify falsely before the grand jury are free from all the penalties of perjury, merely because of the juror's oath of secrecy, the object designed to be effected by that clause of his oath would be perverted, and a measure intended to promote the public welfare would be transformed into a means to defeat the ends of justice. The law does not permit the obligation of secrecy which has been imposed for one purpose to be availed of for a totally different one. The grand juror's oath of secrecy cannot, therefore, be interposed to obstruct the administration of justice—it cannot be made the means to defeat the punishment of crime.

*Christian,* in his *note on page* 126, *4th Black. Com.,* says: "A few years ago, at York, a gentleman of the grand jury heard a witness swear in Court, upon the trial of a prisoner, directly contrary to the evidence which he had given before the grand jury. He immediately communicated the circumstance to the Judge, who, upon consulting the Judge of the other Court was of opinion that public justice in this case required that the evidence which the witness had given before the grand jury should be disclosed; and the witness was committed for perjury, to be tried upon the testimony of the gentlemen of the grand jury. It was held that the object of this concealment was only to prevent the testimony produced before them from being contradicted by subornation of perjury on the part of the persons against whom bills were found. This is a privilege which may be waived by the Crown." Mr. Justice PARKE, in his charge to the grand jury at Middlesex Special Commission, said: "You are assembled in consequence of a commission directed to

8 v. 77.

myself and others empowering us to try certain offenders. This is an extraordinary proceeding. You are aware that it arose from an irregularity in the mode of swearing the witnesses who were to give evidence before the grand jury, *which irregularity would prevent those persons from being indicted for perjury.* This, in the opinion of the Judges, prevented the persons from being legally convicted." 6 *Car. & P.*, 90. "There is no doubt that the witnesses before the grand jury should be sworn in such a manner, that if the testimony was false, they might be indicted for perjury." *State vs. Fasset*, 16 *Conn.*, 457; *State vs. Broughton*, 7 *Iredell*, 96; *People vs. Young*, 31 *Cal.*, 563.

It follows then that there was no error in the ruling of the Court upon the demurrer, nor in its rulings set forth in the fourth and fifth bills of exception.

The docket entries and the ticket given by the deputy clerk to Izer, showing that Izer had been sworn as a witness to the grand jury, were competent and admissible evidence, and there was no error in allowing them to go to the jury. This is all that need be said in disposing of the first exception.

The second and third exceptions raise the only other question for review. It appears by the record, that H. W. Williamson, who was acting deputy clerk, administered to Izer the oath under which the latter testified before the grand jury. The second exception states that Williamson had acted as deputy clerk since 1886; that he had taken the oath of office as deputy and signed the test book that year; that Mr. Luman's term as clerk had expired in 1891, and that he had been re-elected the same year, and had thereafter duly qualified, but that, though there had been no re-appointment of Mr. Williamson, and no new oath of office administered to him, he continued to act as deputy clerk during Mr. Luman's second term of office. Thereupon the prisoner moved

the Court to strike out all the evidence tending to show the administration of the oath by Williamson to Izer, upon the occasion of Izer going before the grand jury in 1892; but the Court overruled the motion, and this is the ruling complained of in the second exception. The prisoner then offered to prove, that there was no record in the minutes of the Circuit Court showing the approval by the Court of Williamson's appointment in 1886; but the State objected, and the Court sustained the objection, and this ruling has been brought up by the third exception.

Of course, if Izer was never legally sworn to give testimony before the grand jury, no false statement made by him before that body could constitute indictable perjury; and if Williamson had no authority to administer to Izer the oath he did administer, Izer was not legally sworn. But Williamson was then in the undisputed possession of the office of deputy clerk, and since 1886 had openly and notoriously discharged the duties pertaining thereto. He was at least a *de facto* officer, filling a *de jure* office, and whatever defects or irregularities there may have been in the manner of his appointment or qualification, his acts, done under color of title, are, upon grounds of public policy and necessity, valid and binding. *Norton vs. Shelby County*, 118 *U. S.*, 425. Or, as was said in *Carleton vs. The People*, 10 *Mich.*, 259: "All that is required when there is an office, to make an officer *de facto*, is that the individual claiming the office is in possession of it, performing its duties and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary that his election or appointment be valid, for that would make him an officer *de jure*. The official acts of such persons are recognized as valid on grounds of public policy, and for the protection of those having official business to transact." See also, *State vs. Carroll*, 38 *Conn.*, 449;

*Clarke vs. Commonwealth,* 29 *Penna. St.,* 129; *Sheehan's Case,* 122 *Mass.,* 445; *State vs. Speaks,* 95 *N. C.,* 689. The Circuit Court was consequently right in the rulings set forth in the second and third exceptions; and, as no error has been found in any of the rulings complained of, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 14th March, 1893.)