## COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed June 1, 1906.

STATE OF MARYLAND, EX REL.
EDWARD TURNER,
VS.
JOHN HOOK, WARDEN CITY
JAIL.

*W. Harry Pairo* for petitioner.
*Eugene O'Dunne* for respondent.

SHARP, J.—

The petition in this case was filed to obtain the writ of habeas corpus. The petition alleges in the usual way that the petitioner is deprived of his liberty without authority of law. It appears from the answer of the Warden and the commitment under which the petitioner is held that he was tried and convicted of the crime of assault before Justice Goldman on May 13th, 1906, at the Western Police Station, sentenced to pay a fine of ten dollars and costs, and to be confined in jail thirty days.

It is now contended that the trial and conviction of the petitioner were illegal, that Justice Goldman was without authority to try the petitioner, and that the conviction was, therefore, a nullity.

The reasons assigned for the contention are as follows:

The Constitution of Maryland, Article 4, Section 42, provides "that the Governor by and with the advice and consent of the Senate shall appoint such number of Justices of the Peace" * * * for the several election districts of the counties and wards of the city of Baltimore as are now or may hereafter be prescribed by law." * * * "The Justices of the Peace * * * shall be conservators of the peace, shall hold their office for two years," &c.

The Constitution contains no provision that a Justice of the Peace shall hold over after the expiration of his term until his successor shall be appointed.

The Act of 1898, Chapter 123 (New Charter), in Section 623, establishes, pursuant to the clause of the Constitution referred to, the number of Justices of the Peace for Baltimore city. Section 630 of the same law provides that "it shall be the duty of the Governor, after the appointment of the Justices of the Peace provided for in Section 623, to select from the Justices of the Peace so appointed a Justice of the Peace to sit at each Station House."

The term for which the Justices of the Peace so selected shall act as Police Magistrates is not fixed in the law. The only provision on this subject is contained in Section 635, which provides that "the Justices of the Peace so selected to sit at any station House may be changed from time to time by the Governor at his discretion."

Justice Goldman was originally appointed and qualified as a Justice of the Peace for Baltimore City on April 23, 1904. On April 28, 1904, he was selected by the Governor to act as Police Magistrate for the Middle District. On April 30, 1906, Justice Goldman was reappointed and qualified as a Justice of the Peace for Baltimore city, and on May 15, 1906, he was again selected by the Governor to act as Police Magistrate for the Middle District.

It appears, therefore, that on May 13, 1906, the day the petitioner was tried, Justice Goldman's original term of two years had expired, that he had been reappointed a Justice of the Peace for Baltimore city, but he had not been again designated by the Governor to act as Police Magistrate, the original order selecting him to act as Police Magistrate had not been revoked by the Governor, nor had any other Justice been selected as Police Magistrate for the Middle District.

The petitioner now contends that the authority of a Justice of the Peace of Baltimore city to act as Police Magistrate depends on the action of the Governor in "selecting" him for this duty, that the authority of a Police Magistrate necessarily ceases when he ceases to be a Justice of the Peace, and that at the time of the trial, Justice Goldman's original term had expired by limitation and the appointment and qualification of his successor. It is contended, the fact he was his own successor was immaterial, in legal

effect a new officer had been appointed and such officer was without authority to act as Police Magistrate until he had been designated for such duty by the Governor.

This contention is not well founded. At the time of the trial, Justice Goldman had been reappointed a Justice of the Peace for Baltimore city, and was, therefore, qualified to act as Police Magistrate when selected by the Governor. Had a different person been appointed on the expiration of Justice Goldman's term and qualified as his successor as Justice of the Peace, a different case would be presented about which no opinion is expressed.

The single question presented in this case is whether Justice Goldman was empowered to act as Police Magistrate after the expiration of his original term, and after his reappointment as a Justice of the Peace, without a new designation by the Governor as a Police Magistrate.

This case is controlled by the decision of the Court of Appeals in the case of Robb vs. Carter, 65 Md., 334. In that case the appellee had been originally appointed City Solicitor of Baltimore city in February, 1885. He was reappointed February —, 1886, but his appointment was rejected by the City Council. He was again appointed in March, 1886, and the City Council again rejected the appointment. He continued to perform the duties of the office, and claimed the regular monthly compensation. Payment being refused the appellee applied for a mandamus to compel the city authorities to pay him.

The ordinance under which he was appointed provided that the term of office should begin on the first day of March immediately following the appointment, and should continue for one year. There was no provision in the ordinance that the appointee should hold office until his successor should have been appointed and qualified.

The Court of Appeals decided:

"* * *. The office being a trust created for the public good, it follows that a cessation of the benefits derived from it ought not to be sanctioned because of a failure to make an appointment by those whose duty it is to appoint. No such failure should be permitted to cause a temporary extinction of the trust. To guard against this

evil there is usually a provision for holding over until the appointment and qualification of a successor, but it has been held in some of the States that, in the absence of any such provision, the incumbent should hold over until another person has been appointed and qualified, and it is intimated that he may reasonably presume that it is his duty to do so, for it must be borne in mind that an official is frequently the custodian of important books, papers and other property, the care of which ought not to be abandoned, and which he cannot properly surrender to anyone not legally authorized to assume control. People vs. Tilton, 37 Cal., 614; Kriedler vs. State, 24 Ohio St., 22. But authorities, introduced from exterior sources, seem to be wholly unnecessary when the question has been determined by domestic adjudication. In Thomas vs. Owens, 4 Md., 221, the right of the incumbent to hold over, in the absence of any provision authorizing him to continue in office until the appointment and qualification of his successor, was ably argued on both sides by some of the most eminent counsel then at the Bar, and in the opinion of the court delivered by the late Chief Judge Le Grand, is found the following exposition of principles applicable to the question then presented and decisive with respect to that now involved in controversy. The learned Chief Judge said that, 'although it is not anywhere expressly said in the Constitution, that he shall continue in his office until his successor has been duly elected, commissioned and qualified, yet, it is obvious to us, that looking to the spirit and policy of the Constitution, as manifested in its provisions affecting the other officers of the Government, in regard to whom it is provided, they shall continue in office until superseded by their qualified successors, that it was not the design of the framers of the Constitution there should be an interregnum in the office of Comptroller, and thereby suspend for the time the whole operations of the Treasury Department of the State.' It has been urged in argument that this decision is applicable only to offices created by the Constitution; but it is impossible to see the validity of this objection. Every office, when not directly created by the Constitution, originates in some statute or ordinance sanctioned by the organic law of the State. The office exists because the public good requires its existence, and it is necessary that the duties assigned to the incumbent should be performed. Therefore, unless there is some clearly expressed and positive prohibition, which, by its terms, operates as an ouster, the person, filling the office, should continue to discharge those duties until a successor is qualified, no matter whether the office is created by the Constitution, by an Act of the General Assembly, or by a municipal ordinance. *Ubi eadem est ratio, eadem est lex. * * *."*

If the contention of the plaintiff is correct there would have been no one competent to perform the duties of Police Magistrate for the Middle District between April 23, 1906, the date on which Justice Goldman's original term as Justice of the Peace expired and May 15, 1906, the date on which he was again selected to act as Police Magistrate after his reappointment as a Justice of the Peace.

The excessive inconvenience of this is apparent. None of those charged with crime could have been tried, or held on bail for a hearing or for the action of the Grand Jury, and no one, except in the few cases in which the action of the Magistrate was not required, could have been released. The administration of justice at the Middle District Station must have entirely ceased.

All the reasons applicable to an officer holding over set out in the opinion of the Court of Appeals are applicable to one in the position of Justice Goldman on May 14, 1906, when the petitioner was tried. He had the power to try the petitioner and the conviction was legal.

Moreover, Justice Goldman was in any event a de facto officer. He had been appointed and qualified as a Justice of the Peace for Baltimore city, and was, therefore, qualified to act as Police Magistrate. He had originally been regularly designated by the Governor as a Police Magistrate, and had

been in possession of the office for a considerable time. No other person had been appointed in his place, or had any claim to the office; his authority had been acquiesced in by the public authorities and by the public, and had never been questioned. Under such circumstances, his acts cannot be questioned collaterally.

Izer vs. State, 77 Md., 115.
Ball vs. U. S., 140 U. S., 126.
8 Ed. L., 818.

It must be held that Justice Goldman's acts in trying the petitioner were valid and the conviction lawful.

The petition will be dismissed and the petitioner remanded to the custody of the respondent.