## POTOMAC VALLEY LEAGUE *v.* COUNTY COUNCIL FOR MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 1219, September Term, 1978.]

*Decided July 10, 1979.*

The cause was argued before THOMPSON and MACDANIEL, JJ., and K. THOMAS EVERNGAM, Associate Judge of the Second Judicial Circuit, specially assigned.

*William S. Green* for appellant.

*Martin J. Hutt, Assistant County Attorney for Montgomery County,* with whom were *Paul A. McGuckian, County Attorney,* and *Richard E. Frederick, Deputy County Attorney,* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

On January 31, 1978, the Montgomery County Council [1] (the Council) adopted Resolution No. 8-1774 granting an application (G-79) for a sectional zoning map amendment, which had the effect of rezoning three parcels of real estate from R-90 (single family residential) to C-1 (local commercial) and R-10 (multi-family, high density). An appeal was taken to the Circuit Court for Montgomery County and on October 20, 1978, Judge Richard B. Latham affirmed the action of the Council. Appellant, Potomac Valley League, an organization comprised of various civic associations, has appealed Judge Latham's order and raises four issues for our determination.[2]

    1. Whether the Council's action was "comprehensive rezoning" and therefore not

---

1. Sitting as a District Council for that part of the Maryland-Washington Regional District located in Montgomery County.

2. The League has standing to bring this appeal by virtue of Md. Code, Art. 66D, § 8-105 (a) which provides that in Montgomery County any association which has appeared at the Council's hearing may appeal its decision.

bound by the strictures of the "change or mistake" rule.

2. Whether the Council's judgment that its action was an implementation or extension of a previous action was fairly debatable.

3. Whether there was sufficient evidence of record to support the rezoning of one of the tracts in question.

4. Whether the participation of the Chairman of the Montgomery County Planning Board in the deliberations of the Council after the record was closed constituted a prohibited *ex parte* contact.

## I The Facts

The area in question lies in the community of Cabin John near the Potomac River in Montgomery County. It is included within the Bethesda-Chevy Chase Master Plan area as delineated by the Master Plan adopted by the Maryland-National Capital Park and Planning Commission (the Commission) in 1970. Although Resolution No. 8-1774 affected three separate parcels, the appellant has concerned itself with only one of those properties (the Wilner tract).

The Wilner tract was originally zoned commercial in 1928 and was classified C-1 with the adoption of the 1954 Montgomery County Zoning Ordinance. At all times pertinent to this case it was improved with a large frame single family type dwelling which over the years has been used to carry on various commercial enterprises such as an art gallery, photo studio and a pottery and craft shop.

On February 21, 1973, the Commission filed an application for a sectional map amendment, covering 310 acres in the Bethesda-Chevy Chase planning area, which proposed to reclassify numerous properties in accordance with the Master Plan. The Wilner tract was among these properties and it was proposed for reclassification to R-90. Subsequently, and after substantial participation by the Cabin John Civic Association, another sectional map amendment application (F-937) was filed by the Commission, replacing the prior application. This

second application covered a smaller area, roughly 57 acres, but it retained the proposal to rezone the Wilner tract to R-90.

By Resolution No. 7-1962, dated October 1, 1974, the Council granted application F-937 but made the following observations in its written opinion:

"The County Council reviewed the recommended reclassifications for each parcel listed in the sectional plan amendment. The Council staff suggested that in some cases the recommended reclassification from a commercial to a residential classification would adversely impact on commercially zoned parcels in the Potomac Palisades that have been an integral part of the area for many years. In several cases the commercial properties date back to the 1920's and early 1930's. *The Council staff recommended that a new commercial zone be established which would provide for less intensive commercial development, that would be truly neighborhood oriented, and would be of the same general character or compatible with the surrounding neighborhood.*

*"The County Council felt that such a zone was needed and that several parcels proposed for reclassification might be appropriate for such a classification. However, the County Council recognized that such a new zone could not be implemented and applied before the time limitation for Council action on sectional plan amendments would take effect. Therefore, the County Council removed or changed the classification of certain parcels in sectional plan amendment F-937 with the understanding that the proposed commercial zone would be applicable to the parcels when the proposed commercial zone became a reality.* The remaining parcels were left in the sectional plan amendment because the recommended reclassification was in conformance with the 1970 Bethesda-Chevy Chase Master Plan or the 1974 amendment to the 1970

Bethesda-Chevy Chase Master Plan relating to the Cabin John Community." (Emphasis added.)

Although the Master Plan emphasized the need to prevent indiscriminate development of commercial uses incompatible with the character of the Cabin John area, "[t]he need for neighborhood commercial facilities . . . was [also] recognized as part of the neighborhood development process." One of the parcels singled out for classification in the newly proposed "commercial-neighborhood" zone was the Wilner tract.

The Council's action with respect to F-937 was appealed to the Circuit Court which upheld it on April 17, 1976. No further appeal was taken. The parties in the present case appear to agree that the adoption of F-937 was a "comprehensive" rezoning.

The unsuccessful challenge to F-937 in the Circuit Court was followed by a campaign on the part of certain landowners to have their former zoning restored. In a letter of July 22, 1976, to the Chairman of the Montgomery County Planning Board (a constituent part of the Park and Planning Commission), the president of the Council stated that "[t]he Cabin John Citizens Association recently expressed strong support for continuing these commercial uses, and has petitioned the Council to restore these properties to their previous zoning status." The president also expressed an interest in the "status of the commercial-neighborhood zone and the problems preventing its completion."

The proposed commercial-neighborhood zone was eventually developed but never adopted. The failure to approve the new classification was apparently based on the view that many of its objectives could be accomplished through the already existing C-1 zone. Nevertheless, the Council remained interested in the question of reclassifying the subject properties and on July 25, 1977 application G-79 was filed by the Planning Board. That application pertained to four parcels, comprising a total of 1.39 acres, including the 0.5 acre Wilner tract. A public hearing on the matter was held on November 9, 1977, after which the record was kept open until November 14. The Council held a public work session on

the application on November 18, at which Dr. Royce Hanson, Chairman of the Planning Board and a member of the Commission, participated. On January 31, 1978, by Resolution No. 8-1774, the Council approved application G-79 which, in part, rezoned the Wilner tract from R-90 to C-1.

## II Whether the Reclassification of the Wilner Property Was Subject to the Change or Mistake Rule and the Procedural Requirements of Piecemeal Rezoning

It is quite well established in Maryland that original zoning and comprehensive rezoning enjoy a strong presumption of correctness. To justify any piecemeal changes in such zoning a strong showing of mistake in the original or comprehensive zoning or of substantial change in the character of the neighborhood must be made. *Stratakis v. Beauchamp,* 268 Md. 643, 304 A. 2d 244 (1973). In addition, piecemeal rezoning must be accomplished through a trial-like proceeding including the right of parties to cross-examine witnesses. *Hyson v. Montgomery County Council,* 242 Md. 55, 217 A. 2d 578 (1966). In the present case no attempt was made to show a change in the neighborhood or a mistake in the most recent comprehensive rezoning; nor was the rezoning in question accomplished in accordance with the local procedural requirements for piecemeal rezoning.

On the other hand, when a property is reclassified as part of a comprehensive rezoning, as that term has been defined by the courts of this State, it will be sustained upon judicial review if it bears "a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare." *Norbeck v. Montgomery County Council,* 254 Md. 59, 66, 254 A. 2d 700 (1969); *Grooms v. La Vale Zoning Board,* 27 Md. App. 266, 282, 340 A. 2d 385 (1975). Comprehensive rezoning is not bound by either the change or mistake rule or the procedural restrictions applicable to piecemeal rezoning. *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 376 A. 2d 483 (1977), *cert. denied sub. nom. Funger v. Montgomery County, Maryland,* 434 U. S. 1067, 98 S. Ct. 1245, 55 L.Ed.2d 769 (1978).

Appellant argues that the Council's approval of G-79, rezoning the Wilner tract from R-90 to C-1, was in effect a piecemeal rezoning under the guise of comprehensive rezoning. The League contends that the adoption of F-937 was the last comprehensive rezoning applicable to the area and that the Council determined under that application that a C-1 classification was not appropriate for the Wilner property. The subsequent rezoning of that property under G-79, it is argued, was merely an impermissible change of mind on the part of the Council. Appellant has provided us with a careful and detailed analysis of the elements of comprehensive zoning, set out by the Court of Appeals in *Montgomery County v. Woodward & Lothrop, Inc., supra,* as those elements relate to the facts of this case. We do not deem it necessary, however, to address each component of that argument because we perceive two fundamental flaws which permeate it throughout. First, in discussing the several elements of comprehensive zoning, appellant views application G-79 in isolation. In doing so it ignores the important and fundamental relationship between that application and F-937. Second, appellant misinterprets what the Council did in 1974 when it acted on application F-937. As we view this case, the relationship between the two rezoning measures leads to the conclusion that G-79 did not constitute a piecemeal rezoning; rather, it was the culmination of the comprehensive rezoning begun under application F-937.

Contrary to appellant's assertion, we do not think the Council determined in 1974 that a C-1 classification was necessarily inappropriate for the Wilner property. We are of the opinion that the Council deferred the ultimate decision on that property, as well as others, until it could establish the proposed commercial-neighborhood zone. This was an apparent attempt to strike a balance between two competing interests: the need to preserve the character of the neighborhood on one hand, and the need for neighborhood commercial facilities on the other. As it turned out, the commercial-neighborhood zone was never adopted. It is notable that the only specific basis for the rejection of the new zone, appearing in the record, is the expressed belief that

many of its purposes could be accomplished through the already existing C-1 zone. After the abandonment of the proposed zone, the question remained of what to do with the Wilner tract and the other properties which had been given an R-90 classification in 1974, under F-937, on the assumption that they would later be considered for a new type of commercial zoning. This question was finally resolved by the Council's determination to restore the original C-1 classification.

The 1974 rezoning of the Wilner tract to R-90 may be viewed not as a determination that such classification was the only one appropriate in the absence of the proposed zone, but as a temporary measure to be employed only until the new zone could be developed. The R-90 classification merely insured that further commercial development of the lot would be prevented until the matter could be given further study. Such an approach to comprehensive zoning is not unprecedented. In *Mettee v. County Commissioners of Howard County,* 212 Md. 357, 129 A. 2d 136 (1957), a parcel was originally zoned "R", residential, on January 12, 1954 with the proviso that reclassification of the tract would be considered upon petition at a later time. Subsequently, such a petition was filed and the property was eventually rezoned to "RR", rural residential, on July 27, 1954. This rezoning was challenged in court on the ground that a showing of change or mistake was necessary but had not been made and, upon appeal, the Court of Appeals said:

"It is true that there must be something more than a change of mind to justify rezoning. It is presumed that the original zoning was well planned and designed to be permanent, but the presumption must be applied to the facts in the particular case.

"In the instant case the presumption arising from the original zoning loses much of its force when we consider the statements made at the hearing prior to the adoption of the master plan. In effect, the proponents of the change were told ... that the matter would receive further consideration. The

County Commissioners acquiesced in this statement. . . . In view of these statements, uncontradicted in the record, it can hardly be maintained that the adoption of the 'R' classification for the area was more than a tentative one, or that it was intended to be permanent and final. . . . The special circumstances surrounding the action of January 12th lead us to the view, . . . that the protestants at that hearing were officially, if informally, told that this particular question was being left open at that time. *The action on July 27th was thus simply a completion of the action begun in January and in substance a part of the original zoning.*" 212 Md. at 366-67. (Emphasis added.)

*See also, Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27 (1953) in which a parcel was zoned residential pending the relocation of a highway and was later rezoned commercial.

The approval of application G-79 was therefore not subject to the strictures of the change or mistake rule. We agree with appellee that the standard by which the resolution of January 31, 1978, is to be measured is that applicable to comprehensive rezoning. In other words, the Council's decision must be affirmed if it bears a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare. *Norbeck v. Montgomery County Council, supra; Grooms v. LaVale Zoning Board, supra.*

### III Whether the Rezoning of the Wilner Tract to C-1 Was Arbitrary or Capricious

We have determined that the Council's action on G-79, rezoning the Wilner tract to C-1, was the completion of a comprehensive rezoning which was begun under application F-937. It is therefore entitled to a strong presumption of validity and appellant bears a heavy burden of overcoming that presumption. *Mettee v. County Commissioners, supra; Iverson v. Zoning Board of Howard County,* 22 Md. App. 265, 322 A. 2d 569 (1974). As appellee points out, it is the

constitutionality and not the wisdom of G-79 which at this stage of the case is in question.

The evidence before the Council included the 1970 Bethesda-Chevy Chase Master Plan which, while recommending preservation of scenic areas, recognized a need for commercial facilities as part of the neighborhood development process. When it acted on application F-937 in 1974, the Council reclassified three parcels from commercial to residential zones. Certain other tracts, including the Wilner property, were only temporarily "downzoned" from commercial to residential, pending further study. The record also shows that the Wilner tract, as well as others involved in application G-79, had been commercially zoned since the 1920's. There was testimony at the public hearing on G-79 that the rezoning was supported by the Cabin John Citizens Association and there was testimony that the commercial uses of the properties considered under G-79 would be beneficial to the neighborhood. It is clear that the Council was attempting to accommodate the two needs recognized in the 1970 Master Plan: the need for preservation and the need for commercial facilities. Whether the specific method used in attempting to accomplish this accommodation was also the wisest course to be taken is not for us to say. The appellant has not met its substantial burden of showing the Council's action to be arbitrary or capricious.

## IV The Participation of Dr. Hanson in the Council's Deliberation

As we have mentioned above, the public hearing on application G-79 was held on November 9, 1977 and the record was kept open until November 14, 1977. On November 18, the Council held a "work session" at which Dr. Royce Hanson, of the Maryland-National Capital Park and Planning Commission and the Montgomery County Planning Board, participated. This work session was open to the public and its date had been announced at the end of the November 9 hearing. The minutes of the work session show the role played by Dr. Hanson:

"The Council met in worksession with Chairman

Royce Hanson and staff member Lester Cunningham, Montgomery County Planning Board; Planning Policy Coordinator Ralph Wilson; and others, to discuss the proposed Cabin John Sectional Map Amendment.

\* \* \*

"Dr. Hanson reviewed his memorandum of July 25, 1977, indicating that at its regular meeting of July 21, 1977, the Montgomery County Planning Board approved the filing of a sectional map amendment for the Cabin John Community in accordance with the recommended plan amendment to the Bethesda-Chevy Chase Master Plan, . . . .

"Dr. Hanson reviewed the history of the sectional map amendment for the Cabin John Community as outlined in the proposed resolution prepared by the Planning Board for approval of the map amendment, and the previous actions taken by the Council.

\* \* \*

"In response to [Councilwoman] Scull's suggestion of grandfathering non-conforming uses, Dr. Hanson stated that a use can be grandfathered but not a specific property. He pointed out that rezoning the Wilner property C-1 does not comply with proposed zoning plans; however, the Council may consider other factors, essentially, any evidence that is before it and is in the record. The evidence on record, he said, does indicate that the community approves the rezoning and it holds no evidence that the C-1 Zone will adversely affect the community in this case. He commented that the rezoning may or may not be challenged in court. Dr. Hanson noted that changes in height and FAR provisions should be handled by text amendments."

Appellant argues that by permitting Dr. Hanson to participate in the work session, the Council went outside the record and engaged in an *ex parte* contact which deprived

appellant of a proper hearing in violation of *Md. Code,* Art. 66D, §§ 8-104 and 8-105. We see no violation. Dr. Hanson's participation consisted of no more than a review of the history of the application and some technical advice. There was nothing improper about this limited participation. See Chapter 2A — Montgomery County Laws 1978, Administrative Procedures Act. In addition, we note that although the work session was open to the public and although appellant was duly notified, apparently no representative of the appellant chose to attend.

*Judgment affirmed.*
*Appellant to pay the costs.*